TIMOTHY HERRICK

*v.*

ALEXANDER DEMPSTER et al.

[Decided July 28th, 1907.]

Upon the question raised by the demurrer, whether the facts exhibited in the bill justify the complainant in instituting this suit without first making demand upon the directors to do so, the record of the proceedings on that subject in the case of *Siegman* v. *Maloney*, 65 N. J. Eq. (20 Dick.) 372, and also the case of *Appleton* v. *American Malting Co.*, 65 N. J. Eq. (20 Dick.) 375, examined, commented on and the ruling in the former case followed.

On demurrer.

*Mr. Edward M. Colie,* for the demurrant.

*Mr. Robert H. McCarter,* for the complainant.

STEVENS, V. C.

This is a demurrer to a bill filed by a stockholder against certain of the directors of the Mine La Motte Lead and Smelting

Company, and against that company praying that those directors may be decreed to pay to the company the whole or any excess of the dividends declared on October 1st, 1903, and on January 6th, 1904, over the actual surplus or net profits of the company.

The question is whether this case comes within the ruling of the court of errors and appeals in *Siegman* v. *Maloney*, 65 *N. J. Eq.* (*20 Dick.*) *372*, in which it was held that no sufficient reason was shown for taking the conduct of the case out of the hands of the company itself; or within the ruling of the same court in *Appleton* v. *American Malting Co.*, 65 *N. J. Eq.* (*20 Dick.*) *375*, in which it was held that sufficient reason was shown.

The company has eleven directors. Of these only five voted for the illegal dividends. They, of course, would be hostile, but they are a minority. To show that, presumptively, a majority of the board would refuse to sue, or to sue effectively, it is alleged that two of the new directors were elected "at the behest of and as the tool and instrument of the said Dempster (one of five who voted for illegal dividends) and to carry out his wishes in regard to the management of said corporation," and that another was elected at the behest and as the tool of Yost (another of the five). Under the rule laid down in *Siegman* v. *Maloney, supra,* where it was held that neither the existence of blood nor of business relationship would justify a presumption of dishonesty, I doubt whether this allegation is sufficient. The allegation is not that the three new directors *were* tools of either Yost or Dempster, but that they were elected as tools. The allegation relates to the mental attitude of the electors and not of the elected. Experience every day demonstrates that men elected to office do not always do what those who have been influential in electing them expect. The bias of Shinn and Donaldson is attempted to be shown by an inference, and by an inference that is not always the true one.

The other pertinent allegation relates to the director, Hall. The bias in his case is said to have arisen out of the fact that he voted for an unlawful dividend, declared in October, 1904; a dividend—so the bill states—not recoverable from him, "because of a change in the statute law of this state by virtue of an act of the legislature  *  *  *  approved March 28th, 1904." This

act (*P. L. 1904 p. 275*) provides that only in case of "any willful or negligent violation" of its provisions shall directors, under whose administration the dividend may have been declared, be liable. It must be assumed from the statements of the bill that Hall's act was neither willful nor negligent. This being so, no moral taint and no legal penalty attached to his conduct. How, then, in the absence of all proof to the contrary, is it to be presumed that he would not perform the duty which he owed the company and its stockholders.

On the face of the bill itself I do not find a sufficient excuse for not first calling upon the company to sue.

But a somewhat singular point has been raised, growing out of the demurrer itself. A single demurrer, joined in by all the directors sued and by the company itself, has been filed. Two specific causes of demurrer are assigned. One is that the complainant has failed to show any necessity for prosecuting this action in his own name. As to this, I may say that if the bill failed to show a cause of action in the complainant I should find it difficult to give a reason why the company itself might not take the objection by demurrer. The very fact that it did take the objection, would, in a sense, be an affirmation on its part that it regarded itself, and not the complainant, as the proper *dominus litis*. But in this case the company has gone further. It has joined in another cause of demurrer, to wit, that the complainant has not, by his bill, stated such a case as to entitle him to any relief of any sort as to the matters therein contained. The court of errors and appeals, in *Siegman* v. *Electric Vehicle Co., 65 Atl. Rep. 910,* held that acts similar to those here complained of are illegal and incapable of ratification by the board of directors, or even by a majority of the stockholders. By its demurrer, then, the company has taken up the indefensible position that the directors are not liable. It will hardly do to say that this is only matter of pleading. Pleadings are required for the very purpose of compelling parties to put in authentic form what they propose to insist upon. Here, one of the company's insistments is that the complainant has no cause of action. Its agent states, in the affidavit attached to the demurrer, that it is not interposed for the purpose of delay, but in good faith. Such

being the company's position, disclosed by the record under consideration, is it not a fair inference that a request to sue would not have been acceded to?

The case is somewhat anomalous; for relief is given, not to the complainant, who prays it, but to the defendant, who may resist it. · The position of the parties to the record suggests some interesting questions. Suppose the pleader should state, in his bill, a clear cause of action and should also state a proper demand or a sufficient reason for not making one. The defendant company might conceivably adopt one of three courses. It might file a cross-bill, praying the same relief against the culpable directors that the complainant prays; or it might remain entirely passive and let a decree *pro confesso* go against it; or it might deny the material allegations of the bill and assert, *e. g.*, that it had declared its dividends out of surplus and not out of capital. Now, suppose that proofs having been taken and the case having come on for final hearing, it clearly appeared that there was a good cause of action; and suppose that it as clearly appeared that complainant had not made a proper demand before commencing suit, or had not, as matters appeared when the bill was filed, shown a proper excuse for his failure to make it; in other words, had failed to prove the allegations of his bill in that regard. Would a court of equity dismiss the bill and give no relief? Would it not rather give the appropriate relief on the cross-bill or, in the alternative cases supposed, would it not find that the position of passivity or hostility actually assumed and maintained in the face of clear proof, cast a reflex light upon the directors' intentions and was in itself evidence that a demand to sue effectively would have been rejected?

So, if on the face of the demurrer, it appears that the company is uniting with the directors in denying that it has any cause of action against some of their number, when on the face of the bill it is apparent that it has, is it to be inferred that the attitude assumed when the demurrer was filed was that which would have been taken before it was filed?

In the English practice the question could not arise. The stockholder makes the company a co-complainant. *Duckett* v. *Gover, 6 Ch. Div. 82; Wilson* v. *American Palace Car Co., 64*

*N. J. Eq.* (*19 Dick.*) *534.* Under our practice the company is quite anomalously made a defendant. Hence the difficulty. In the absence of any decision on the subject, I should have found it difficult to come to a very satisfactory conclusion either way. On the one hand, it may be said that in denying to the company the right to demur on a ground plainly apparent on the face of the bill, a ground that the other defendants may take, we are refining too much. On the other hand, it is urged that if the company, at the time it filed its demurrer, took the ground that there was no cause of action on the facts stated, it is a fair inference that it would have taken the same ground before the bill was filed, it being under no necessity to demur for any such reason.

I regard the point, however, as not open to argument, for it appears to have been necessarily involved in the decision in *Siegman* v. *Maloney, supra,* and to have been then decided against the contention of complainant in this suit, both here and on appeal. I have examined the record of that case, and I find that a demurrer of precisely the same kind was interposed by the company, the only difference being that there the other defendants filed separate demurrers, while here the company and the defendants sued have joined in the same demurrer—a difference that seems to be quite immaterial. As the court of errors and appeals sustained the decree of this court, overruling all the demurrers filed in that case, the practice appears to have been settled.

The demurrer is overruled.